# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS TAYLOR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case number 4:08cv1305 CDP/TCM |
| | ) |
| TROY STEELE,[1] | ) |
| | ) |
| Respondent. | ) |

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Demetrius Taylor (Petitioner), a Missouri prisoner, petitions the United States District

Court for the Eastern District of Missouri for federal habeas corpus relief from a March 11,

2005 conviction after a jury trial.[2] See 28 U.S.C. § 2254. Respondent filed a Response to the

---

[1] When he filed this federal habeas action, Petitioner was incarcerated at Missouri's Eastern Reception, Diagnostic and Correctional Center where Steve Larkins was the Warden. In recent correspondence (Doc. 14), Petitioner advises that he has been transferred to the Potosi Correctional Center, where Troy Steele is the Warden. See http://doc.mo.gov./division/dai/warden.php (last visited July 20, 2011). Therefore, the Court will substitute Troy Steele for the originally named Respondent, Steve Larkins.

Petitioner identified the then-Attorney General for the State of Missouri, Jeremiah W. (Jay) Nixon, in his federal habeas petition. (Pet. at 1 [Doc. 1].) Because Petitioner is not challenging a sentence he is going to serve in the future, the present Attorney General of Missouri, Chris Koster, will not be added as a Respondent. See Rule 2(b), Rules Governing Section 2254 in the United States District Court.

[2] Petitioner included in his petition a request for an evidentiary hearing (Pet. at 15 [Doc. 1 at 29]) and filed, contemporaneously with the petition, a motion for an evidentiary hearing (Pet'r Mot. Evidentiary Hr'g [Doc. 4].) This Court denied the motion without prejudice (Doc. 7) and Petitioner did not subsequently present a motion or request for an evidentiary hearing. Therefore, the issue of an evidentiary hearing is not now before this Court.

Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue (Response),[3] and Petitioner filed a reply.[4]

This matter is before the undersigned United States Magistrate for a review and a recommended disposition. <u>See</u> 28 U.S.C. § 636(b). Finding the federal habeas petition presents seven grounds for relief based on the alleged ineffective assistance of Petitioner's trial attorney; and concluding that four of those grounds for relief are procedurally barred while the other three grounds are without merit, the undersigned recommends denying the petition without further proceedings.

---

[3] The undersigned recently received from Respondent a copy of pages 18, 21, 31, 41, 47-49, and 62 of Respondent's Exhibit C, the legal file from Petitioner's direct appeal to the Missouri Court of Appeals, Eastern District, which pages had been missing from that exhibit. The Clerk of Court will be directed to make those pages part of the record.

[4] Petitioner attached several exhibits to his reply. (<u>See</u> Reply Attachs. [Docs. 13-2, 13-3, 13-4, and 13-5].) Respondent has not presented an objection to these materials, which appear to be copies of: Petitioner's Motion to Consider Amended Motion under Rule 29.15 as Timely Filed (identified as Pet'r Ex. I); the April 1, 2008 unpublished per curiam decision of the Missouri Court of Appeals in Petitioner's post-conviction appeal (identified as Pet'r Ex. II); a May 17, 2007, order of the post-conviction motion court, titled "Judgment" (identified as Pet'r Ex. III); and a May 17, 2007, letter from Petitioner's post-conviction attorney to Petitioner (identified as Pet'r Ex. IV). Petitioner's Exhibits II and III are part of the available record, identified as Respondent's Exhibit I and as Respondent's Exhibit H at page 25, respectively. The other two documents, Petitioner's Ex. I and IV, do not appear to be part of the available state court record, although the post-conviction motion court's legal file contains a docket sheet reporting that on April 26, 2007, Petitioner's counsel filed a "motion to consider amended motion under Rule 29.15 as timely filed" and on May 17, 2007 "attorney['s] motion to consider amended motion under Rule 29.15 as timely filed . . . without trial [was] sustained." (<u>See</u> Postconviction Docket Sheet, Post-conviction Legal File, Resp't Ex. H, at 1.)

To the extent these materials are part of the record below, are not part of Respondent's exhibits filed in this habeas proceeding, and are relevant to this Court's discussion, the Court will refer to them as identified by Petitioner.

## Background

Petitioner was charged, as a persistent offender (Count IV),[5] with committing first degree robbery, in violation of Mo. Rev. Stat. § 569.020, at about 3:00 p.m. on August 23, 2003, by forcibly stealing money, keys, and a white 2000 Chevrolet Monte Carlo from Larry E. Phipps (Victim) while Shawn A. Young (Co-Defendant) displayed what appeared to be a deadly weapon (Count I), and with committing armed criminal action, in violation of Mo. Rev. Stat. § 571.015, by knowingly committing that robbery through the use and aid of a deadly weapon (Count II).[6] (Information, filed Feb. 09, 2005, Legal File, Resp't Ex. C, at 23-25 [all of Respondent's Exhibits are filed as part of Doc. 12].)

On the first day of Petitioner's and Co-Defendant's joint jury trial in February 2005, the trial court held an evidentiary hearing, outside the presence of the jury, on a motion to suppress identification.[7] At that hearing, Detective Jarad Harper and Detective Mike Wilson, both of the police department for the City of Kirkwood, testified to their participation in the investigation of the charged offenses, including the conduct of photo arrays and live lineups seeking Victim's identification of the two men involved in the offenses; and both of these

---

[5] Before submitting the case to the jury and outside the presence of the jury, the trial court found that Petitioner was a prior and persistent offender. (Legal File, Resp't Ex. C, at 28; Trial Tr., Resp't Ex. D, at 525.)

[6] The information consists of four counts. Count III does not focus on Petitioner; rather, that count charged Co-Defendant as a persistent offender. (See Information, filed Feb. 9, 2005, Legal File, Resp't Ex. C, at 23.)

[7] Neither that motion nor any other motion to suppress is part of the record available in this case. The trial court docket sheet does not reflect that Petitioner filed a motion to suppress. (See Docket Sheet, Legal File, Resp't Ex. C, at 1-4.)

witnesses were cross-examined by counsel for Petitioner and counsel for Co-Defendant. (Trial Tr., Resp't Ex. D, at 9-54.)  The Detectives' testimony at the suppression hearing revealed that there were two photo arrays shown to Victim on August 30, 2003, that did not include a picture of Petitioner, and during which Victim positively identified another man, Antonio Seviere, as one of the two perpetrators, as the one who held the gun during the robbery.[8]  (Id. at 23-29, 47-49, 54-56, 76.)  On September 5, 2003, Victim viewed photo arrays, that did not include a picture of Petitioner, and positively identified Co-Defendant as one of the perpetrators.  (Id. at 13-16, 34, 43.)  Five days later, on September 10, 2003, Victim was transported by a police officer to view a live lineup, which included Co-Defendant but not Petitioner, and Victim identified Co-Defendant as the perpetrator with the gun.  (Id. at 16-20, 36, 43.)

Then on September 22, 2003, Victim was brought to a live lineup, which included Petitioner in position number four, and, after viewing the lineup, Victim stated that either the person in position number four or the person in position number five "could have been" or "possibly" was one of the perpetrators.  (Id. at 45, 58, 78.)  Before he viewed the lineup on September 22nd, Victim was told that, based on the police investigation, he was viewing another live lineup to see if there was anyone there who may have been involved in the

---

[8] On that day, Victim saw one array of pictures of individuals while the individuals were facing front and then, at Victim's request, saw pictures of the same individuals' profiles. (Trial Tr., Resp't Ex. D, at 63-65, 301.)

Detective Wilson testified that Victim said at that array that "he was 85 percent certain that [the identified man, Seviere,] was the man with the gun." (Id. at 56.)

robbery.  (Id. at 51.)  Before this September 22nd lineup the police had found Co-Defendant's print on a compact disc (CD) that had been in Victim's car (id. at 56) and Petitioner's palm print and fingerprint on the outside of Victim's car (id. at 57; see also id. at 539-541, 544). Victim later told the police that the person who was either in position number four or position number five at the September 22, 2003 lineup was the person who did not have the gun, but who had a t-shirt wrapped around his head, during the robbery.  (Id. at 59.)

At the conclusion of the suppression hearing, the trial court overruled the motion to suppress, withholding a final ruling until after Victim testified.  (Id. at 84.)  At trial, Victim testified that at about 2:47 p.m. on August 23, 2003, he purchased items to clean his car from a store near a Wal-Mart and then headed to the car wash that was right down the street, in Kirkwood, Missouri.  (Id. at 253-55.)  While Victim was washing the rims of the car's tires, a man displaying a small silver gun grabbed Victim by the wrist; then a second man reached into Victim's pocket to get his car keys, told Victim to get in the car, which Victim refused to do, and got in the driver seat, while the person holding the gun got in the passenger seat, and the two men took off in Victim's car.  (Id. at 256-60.)  Victim also noticed a Nissan vehicle driven by a woman with brightly colored hair speed off after his car.  (Id. at 261-63.)


Victim ran to the office at the car wash to call the police and, within a few minutes, while at the car wash, Victim gave Jackie Tabers, an officer with the Kirkwood police department, a description of the assailants, including that the person taking his car keys was five feet nine inches tall, weighed about 165 to 170 pounds, had a goatee and mustache, wore

a tank top or muscle shirt, and had a white t-shirt tied high around his head.[9] (Id. at 263-64, 274.)  Within about an hour, Victim headed to the police station where he saw his car and spoke with Detective Wilson.  (Id. at 274-75, 294.)  Victim described Petitioner to Detective Wilson as a black male, twenty to twenty-five years old, five feet eight inches to five feet nine inches tall, weighing 165 pounds, wearing a sleeveless white t-shirt and blue jean shorts, having a thin beard and a mustache, and wearing a white t-shirt tied around his head.  (Id. at 630-31.)

On August 30, 2003, Victim went to the Kirkwood Police Department to view a photo lineup, and identified a man, Seviere, that Victim was "85 percent sure . . . was the one with the gun."  (Id. at 276-78, 300, 301, 308, 312, 315-16.)  On September 5, 2003, Victim viewed a photo array, and identified another man (Co-Defendant) who he thought was involved in the robbery.[10]  (Id. at 279-80.)   On September 10th and September 22nd, 2003, a Kirkwood police officer tookVictim to view live lineups.  (Id. at 281-83.)  During the September 10th lineup, Victim identified Co-Defendant as the person who had the gun.  (Id. at 282, 311-12.)

---

[9] Detective Tabers testified that Victim described Petitioner as a black male, who was five feet nine inches tall and weighed 165 pounds, who had worn "a white muscleman T-shirt, blue jeans, and a white T-shirt wrapped around his head."  (Trial Tr., Resp't Ex. D, at 467, 480.)

Detective Wilson testified that Petitioner's booking sheet described Petitioner as five feet eight inches tall and weighing 150 pounds.  (Id. at 606, 608.)

[10] Victim testified that at the September 5, 2003, photo array he had identified the person who had held the gun during the robbery.  (Trial Tr., Resp't Ex. D, at 280.)  Detective Harper testified that Victim had said at the September 5, 2003, photo array that the person he had identified was the perpetrator who had gone through his pockets, taken his keys, and driven his car, i.e., was the person without the gun.  (Id. at 562.)

During the September 22nd lineup Victim said either number four (Petitioner) or number five was the man who had taken his keys out of his pocket.  (Id. at 283, 321-22, 328; see also id. at 599-601.)  The police had contacted Victim to attend the live lineups, and Victim knew at the September 10th lineup that the police had someone in custody.  (Id. at 310-11, 317.)  The police did not talk to Victim about their investigation or how it was going, other than to ask Victim to attend lineups.  (Id. at 317.)

While he was testifying at trial Victim positively identified Co-Defendant as the person holding the gun and Petitioner as the man taking his keys and driving his car.  (Id. at 284-85.)  Victim also stated he had never seen the two assailants before the robbery.  (Id. at 293.)

After hearing Victim's testimony, the trial court denied the motion to suppress.  (Id. at 333.)  Specifically, the trial court stated that

> All the rulings up till now had been somewhat dependent on the final ruling based on any suggestions that [Victim] was given or his opportunity to observe. And the Court finds that he had sufficient opportunity to observe the events that he testified about, in particular the identification from the robbery that he was involved with.
>
> And the Court further again finds that based on all the evidence now, that the police procedures were not impermissibly suggestive so as to taint the line-ups, and will deny the Motions to Suppress based on all the evidence heard, including [V]ictim's testimony.

(Id.)

During trial, in addition to presenting those three witnesses,[11] the State presented the testimony of seven other witnesses. Parnell had been a neighbor of Co-Defendant and Petitioner. (Id. at 338-39, 341-42, 379.) She testified that on the morning of August 23, 2003, when she had platinum blonde hair, Co-Defendant approached her and asked where Petitioner was, and then she and Co-Defendant got into a Nissan Co-Defendant had and drove to Kirkwood, where they found Petitioner with his then-girlfriend, Shalonda Riggens,[12] and Petitioner joined Parnell and Co-Defendant. (Id. at 341, 343-46.) At that time Petitioner had on a white tank top. (Id. at 348, 364.) Parnell drove the Nissan and noticed that Co-Defendant had a silver revolver with him. (Id. at 347-48; 369.) The three went to the Wal-Mart in Kirkwood where they purchased white t-shirts, among other things, between about 1:45 p.m. and 2:30 p.m. and then talked awhile at the car, before leaving and pulling into a nearby car wash, at Petitioner's request, where Co-Defendant and Petitioner left the Nissan. (Id. at 349-55, 361-64, 389-90, 391-93, 395, 396.) She drove away from the car wash after

---

[11] During trial, Detectives Harper and Wilson testified to essentially the same information that they had testified to at the suppression hearing. (See Trial Tr., Resp't Ex. D, at 558-662.) Detective Harper also specifically stated that prior to the September 5, 2003, photo lineup he had asked Victim whether he or his brother knew Co-Defendant, and would have told Victim that "if [Victim saw] anyone in the [six-picture] photo lineup that [he] recognize[d] being involved in the incident, [he should] point [him] out." (Id. at 573, 575.)

[12] The record reveals two different spellings of this person's first name: "Sholanda" (see Trial Tr., Resp't Ex. D, at 344) and "Shalonda" (see Pet'r's Pro Se and Amended Post-Conviction Mots., Post-Conviction Legal File, Resp't Ex. H, at 19 and 25, respectively). Because this person was reportedly Petitioner's girlfriend and wife the Court will spell it as Petitioner spelled it in his post-conviction motions.

seeing Petitioner and Co-Defendant speed away in the Monte Carlo and Victim run into the car wash office. (Id. at 365, 398-99, 401.)

Parnell further testified that sometime before they went to Wal-Mart that day, she, Co-Defendant, and Petitioner had used heroin. (Id. at 370.) Later that day, after the car wash incident, Parnell met up with Co-Defendant and Petitioner and they "went down to [a] White Castle[] on Hebert to buy some more heroin." (Id. at 372; 378-80.) The Nissan broke down before they got to the White Castle, so they walked there and Petitioner and Co-Defendant bought something to eat while Parnell "got the heroin." (Id. at 373, 375, 381.) They returned to the car but could not get it going and got rides away from the area. (Id. at 382-83.)

Parnell subsequently identified Petitioner and Co-Defendant at a lineup on September 16, 2003, and then in-court during Petitioner's trial. (Id. at 383-86; see also id. at 597-98.)

Christie Dickerson testified that the Nissan broke down near her home, which is near the White Castle on Hebert; testified that, during a photo array on September 17, 2003, she identified the two men, including Petitioner, who were with the broken down Nissan; and identified Petitioner and Co-Defendant in-court. (Id. at 438-54; see also id. at 603-04.)

Finally, the State presented the testimony of David James, who is responsible for providing surveillance pictures at White Castle and who identified two surveillance pictures from the White Castle on Hebert on August 23, 2003 (id. at 457-63), as well as various law enforcement officials with the City of Kirkwood Police Department and the St. Louis County Police Department: Kirkwood Officer Jackie Tabers, who responded to Victim's call to police and, at the car wash, obtained Victim's description of the robbers (id. at 464-85); Kirkwood

Detective Thomas Joseph who processed a speaker, CD cases, and CDs found in Victim's car for fingerprints (id. at 485-97); Kirkwood Detective Steven Urbeck, who processed Victim's car for prints (id. at 497-522), and County Latent Examiner Dan Stoecklin, who evaluated the prints from Victim's car and other property, and had found a palm print and a fingerprint belonging to Petitioner on the outside of Victim's car (id. at 526-55).

In addition to presenting the testimony of ten witnesses, the State introduced numerous exhibits, including several photographs, a video of the robbery showing Victim's car, the Nissan, and a man with a white t-shirt tied around his head that was recorded by an ATM at the car wash (id. at 267-72; 367-68), surveillance pictures from the Wal-Mart store in Kirkwood on August 23, 2003 between about 1:45 p.m. and 2:30 p.m. that show Petitioner with Co-Defendant and Parnell buying white t-shirts (id. at 349-59); surveillance photographs from the White Castle on Hebert at about 5:15 p.m. on August 23, 2003, showing Petitioner and Co-Defendant standing inside at the counter (id. at 373-76); and pictures of Petitioner's palm print and fingerprint found on Victim's car (id. at 501-06; see also 526-55).

While Co-Defendant testified at trial (id. at 664-705), Petitioner did not (see, e.g., id. at 709).

The jury found Petitioner guilty of both offenses and the trial court sentenced Petitioner on each count to a thirty year term of imprisonment, with the two sentences running concurrently. (Verdicts, and Sentence and Judgment, Legal File, Resp't Ex. C., at 49-50, 51, and 55-57; Trial Tr., Resp't Ex. D at 786-88, 793.)

Petitioner presented one point in his timely direct appeal. (Pet'r Br., Resp't Ex. A.) Specifically, Petitioner argued that the trial court deprived him of his rights to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments by overruling his trial attorney's[13] objection to the prosecutor's closing argument that "You cannot find one guilty and not the other because of that statement," which, Petitioner urged, misstated the law of accomplice liability and discouraged the jury from considering the evidence as to each defendant separately.[14] (Id. at 10, 11.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed Petitioner's conviction in a summary per curiam order, dated June 27, 2006, supported by a

_____

[13] References to Petitioner's trial attorney or trial counsel are references to the attorney who represented Petitioner during trial. For a short while prior to trial, Petitioner had two other attorneys representing him before the trial court, see, e.g., November 10, 2003, January 20, 2004, and January 23, 2004, docket entries in trial court record, Legal File, Resp't Ex. C, at 2. Those two attorneys are not the subject of Petitioner's ineffective assistance of counsel claims.

[14] In rejecting this point, the Missouri Court of Appeals clarified that:

[Petitioner] claims that the trial court erred in overruling his objection to a portion of the State's closing argument. The relevant part of the State's closing argument, is as follows:

. . . [Co-[D]efendant] tells his story . . . if one part is a lie, you can not believe his whole story. And now they are directly linked to his story because he puts [Petitioner] at the car scene to get his print on there and not at the crime. So they are linked. You can not [sic] find one guilty and not the other because of that statement.

In making this argument, the State was referring to Co-[D]efendant's testimony that he and [Petitioner] were near the car when it was located in the City of St. Louis, but were not present at the car wash at the time of the crime.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. E, at 3.)

memorandum explaining the decision that was sent only to the parties. (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. E.) In this direct appeal, the state appellate court summarized the facts of the crimes by stating:

> On August 23, 2003, [Petitioner] and [Co-Defendant] were at the Squeaky Clean car wash in Kirkwood, Missouri. Co-[D]efendant approached . . . Victim . . . , who was cleaning his car, a 2000 Monte Carlo ("the car"). Co-[D]efendant was holding a gun, and proceeded to grab Victim's wrist. As Victim tried to pull away, [Petitioner] entered the vicinity, and took [V]ictim's keys from his pocket. After unsuccessfully attempting to get Victim into the car, Co-[D]efendant and [Petitioner] released Victim, and drove off in the car. The car was later found near an abandoned building at 3631 Cass in the City of St. Louis.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), Resp't Ex. E, at 2.) The state appellate court concluded the prosecutor's challenged argument was "fairly drawn from the facts" and "did not contain any language which could have made the jury think that the statement was the law." (Id. at 4.) Additionally, the appellate court concluded that, even if the trial court erred in overruling the objection to this argument, "the error did not have a decisive effect on the jury's decision." (Id. at 4.)

The state appellate court issued its mandate on July 21, 2006. (See July 21, 2006 entry on Docket Sheet for **State v. Taylor**, No. ED86041, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited July 21, 2011).) Petitioner did not file a motion for transfer to the Missouri Supreme Court. (See id. after July 21, 2006 entry on that Docket Sheet.)

On August 21, 2006, Petitioner filed a timely pro se motion for post-conviction relief[15]

and motion for evidentiary hearing. (Pet'r Mot Post-Conviction Relief, Post-Conviction Legal

File, Resp't Ex. H, at 3-23.)

Thereafter, through counsel, Petitioner filed an amended motion for post-conviction

relief, including a request for an evidentiary hearing. (Pet'r Am. Mot Post-Conviction Relief,

id. at 24-34; see also May 17, 2007, entry on docket sheet for post-conviction motion

proceeding, id., at 1, sustaining motion to consider amended post-conviction motion as timely

filed, and post-conviction motion court's finding of fact 14 stating that the amended post-

conviction motion was filed, id. at 38.) By his amended post-conviction motion, Petitioner

claimed that his trial attorney (a) failed to move to suppress, object to, and include in the

motion for new trial Victim's unreliable in-court identification of Petitioner (id. at 25-29); (b)

---

[15] By his pro se post-conviction motion, Petitioner presented claims that his trial attorney was ineffective (1) in failing to present Victim, "the State's key witness," during a hearing on the motion to suppress the in-court identification of Petitioner due to Victim's initial "positive" out-of-court identification of a person other than Petitioner as the second participant in the crimes (Pet'r Pro Se Mot for Post-Conviction Relief, Post-Conviction Legal File, Resp't Ex. H, at 9-12); (2) in failing to object to Victim's in-court identification of Petitioner due to Victim's initial out-of-court identification of a person other than Petitioner as the second person involved in the crimes (id. at 12-14); (3) in failing to object to Parnell's testimony about other crimes, i.e., that Petitioner went to White Castle to buy heroin (id. at 14-6); (4) in failing to object to the testimony of James, who testified to some surveillance photographs taken at White Castle on the day of the offenses, which do not show the car allegedly taken during the charged offenses or the purchase of heroin by Petitioner (id. at 16-17); (5) in stating during closing argument that Petitioner "had a drug problem and request[ing] the jury panel not to hold that against [Petitioner]" (id. at 17-19); (6) in failing to call as an alibi witness, Shalonda Taylor, who was ready and able to testify that Petitioner was with her at the time of the crimes and whose contact information had been provided to Petitioner's trial attorney (id. at 19-20); and (7) in failing to call "Anthony Dickerson, the owner of the car," who could have testified about lending his car to Seviere, the person Victim initially identified out-of-court as the second person involved in the offenses (id. at 20-21).

failed to object to Parnell's testimony that Petitioner had used heroin as improper evidence of other crimes (id. at 25, 29-30); (c) failed to call Shalonda Taylor, Petitioner's wife, as an alibi witness (id. at 25, 30-31); and (d) failed to call as a defense witness Dixon, the owner of the vehicle used in the robbery, who had reportedly loaned the vehicle to Seviere, the person Victim initially identified out-of-court as the second person involved in the crimes (id. at 25, 31-33).

The motion court denied the request for a hearing on all grounds for relief "except point C," regarding counsel's failure to call Shalonda Taylor, and then noted "[t]he witness for point C did not appear [and t]he record refutes the other points." ("Judgment," dated May 17, 2007, Post-Conviction Legal File, Resp't Ex. H, at 35.) Thereafter, on July 17, 2007, the motion court entered findings of fact, conclusions of law, order, and judgment ("Post-conviction Judgment") denying the four grounds presented in Petitioner's amended post-conviction motion. (Post-conviction Judgment, Post-Conviction Legal File, Resp't Ex. H, at 36-46.)

Petitioner pursued three points in his timely post-conviction appeal. (Pet'r Br., Resp't Ex. F.) First, Petitioner argued that the motion court erred in denying his post-conviction motion without an evidentiary hearing, because he pleaded facts, which warranted relief and were not refuted by the record, showing that his trial attorney violated his right to the effective assistance of counsel by failing to file a pretrial motion to suppress challenging Victim's identification of Petitioner and by failing to object at trial to Victim's identification of Petitioner, in that the procedures used for Victim's out-of-court identification of Petitioner

"were so suggestive as to taint the reliability of" Victim's out-of-court and in-court identifications. (Id. at 10, 13.) For his second point, Petitioner urged that the motion court erred in denying his post-conviction motion without an evidentiary hearing, because he pleaded facts, which warranted relief and were not refuted by the record, showing that his trial attorney violated his right to the effective assistance of counsel by failing to object to Parnell's testimony that Petitioner had used heroin because such testimony was evidence of a prior, unrelated crime. (Id. at 11, 21.) In his third point, Petitioner contended that the motion court erred in denying his post-conviction motion without an evidentiary hearing, because he pleaded facts, which warranted relief and were not refuted by the record, showing that his trial attorney violated his right to the effective assistance of counsel by failing to call Anthony Dixon[16] as a witness, in that Dixon's testimony "would have provided independent corroboration of [Co-Defendant's] trial testimony and of [Victim's] identification of . . . Seviere from the photo line-up." (Id. at 12, 27.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed the motion court's decision in a summary per curiam order, dated April 1, 2008, accompanied by a memorandum explaining the decision that was sent only to the parties. (Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I.)

---

[16] Petitioner refers to this person as "Anthony Dickerson," see Pet'r Pet. at 15 [Doc. 1 at 16], and as "Anthony Dixon," see Pet'r Reply at 19 [Doc. 13]. This Court will refer to this person as "Anthony Dixon" because the state courts referred to this person as "Anthony Dixon."

With respect to Petitioner's first point claiming that trial counsel was ineffective for failing to seek suppression of Victim's identification of Petitioner, or to object at trial to Victim's identification of Petitioner, the Missouri Court of Appeals stated:

> In his first point on appeal, [Petitioner] claims that trial counsel was ineffective for failing to seek suppression of [V]ictim's identification of [Petitioner] or to object at trial to the identification. [V]ictim had already identified [Petitioner]'s [C]o-[D]efendant and had tentatively identified another man as the assailants when police asked [V]ictim to view a fourth lineup because investigators had developed additional leads. [Petitioner] argues this led [V]ictim to believe that his previous tentative identification of the other man was wrong and that the real assailant appeared in the fourth lineup. Therefore, [Petitioner] contends, the procedures used to obtain his identification were so suggestive as to taint the reliability of the identification, both before and during trial, and counsel was ineffective for failing to seek suppression of the identification and to object at trial.
>
> To prevail on his claim, [Petitioner] must first demonstrate that the investigative procedures the police employed were impermissibly suggestive. Olds v. State, 891 S.W.2d 486, 490 (Mo. [Ct.] App. . . . 1994). [Petitioner] "must clear the suggestiveness hurdle before procuring a reliability review." Id. (quoting State v. Vinson, 800 S.W.2d 444, 446 (Mo. banc 1990)). A pretrial identification method is overly suggestive when the identification results from police actions or procedures rather than from the witness's recall of first-hand observations. Woodson v. State, 215 S.W.3d 349, 354 (Mo. [Ct]. App. . . . 2007). Even where police tell a witness that the suspect is in the lineup, a lineup is not impermissibly suggestive because it is implicit that a lineup or photo array includes a person the police suspect committed the crime. State v. Jones, 917 S.W.2d 622, 624 (Mo. [Ct.] App. . . . 1996).
>
> Without showing that the lineup procedures were impermissibly suggestive, [Petitioner] cannot establish that either a motion to suppress or an objection at trial would have been meritorious. Woodson, 215 S.W.3d at 355. Trial counsel cannot be held ineffective for failing to file a meritless motion to suppress. Id. Likewise, counsel cannot be faulted for failing to make a meritless objection. Olds, 891 S.W.2d at 490.
>
> We conclude that the investigative procedures used to obtain [V]ictim's identification of [Petitioner] were not unduly suggestive. The record contains

no evidence that the lineup was structured in any way to draw [V]ictim's attention to [Petitioner]. There is no evidence that the police in any way encouraged [Petitioner]'s identification. Indeed, [Petitioner]'s then-counsel observed the lineup. In fact, [V]ictim was unable to positively identify [Petitioner] during the lineup, which further confirms that the lineup was not unduly suggestive. State v. Harris, 860 S.W.2d 839, 842 (Mo. [Ct.] App. . . . 1993).

Because the lineup procedures were not overly suggestive, we do not find trial counsel ineffective for failing to file a motion to suppress or to object to [V]ictim's in-court identification [of Petitioner]. Therefore, the record refutes [Petitioner]'s claims, and the motion court properly determined that no evidentiary hearing was required on this issue. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I, at 3-5.)

For Petitioner's second point, that his trial attorney was ineffective for failing to object to Parnell's testimony that Petitioner used heroin on the day of the offenses, the Missouri Court of Appeals stated that Petitioner

argues the testimony was evidence of a prior, unrelated, and uncharged crime that was highly prejudicial to [Petitioner] with no probative value. He contends that had counsel objected, the trial court would have sustained the objection, and a reasonable probability exists that the outcome of the trial would have been different.

Generally, a defendant can stand trial only for the offense charged, and evidence of other uncharged crimes, misconduct, or bad acts that does not properly relate to the charged offense violates the general rule. Zych v. State, 81 S.W.3d 96, 99 (Mo. [Ct.] App. . . . 2002). Even if we assume, without deciding, that trial counsel's failure to object constituted a failure to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, [Petitioner] cannot meet the second element of the Strickland[ v. Washington, 466 U.S. 668 (1984)] test. The second part of the test requires a determination of whether a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. [Zych, 81 S.W.3d] at 100 (quoting Strickland, 466 U.S. at 694)[]). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694)[]).

- 17 -

Here, [Petitioner] has failed to satisfy the second element of the Strickland test because the State's evidence that [Petitioner] committed the robbery was overwhelming. Devona Parnell described [Petitioner]'s activities the day of the robbery and his involvement in the robbery, and surveillance videos from multiple sources corroborate Parnell's testimony. [V]ictim identified [Petitioner], and [V]ictim's testimony placed [V]ictim at the Kirkwood Wal-Mart at the same time other evidence showed that [Petitioner] was there. [Petitioner]'s palm print and fingerprint were found on [V]ictim's car, which was recovered in [Petitioner]'s immediate neighborhood. The car was recovered one hour after its theft, so [Petitioner] would have had quite a narrow window of opportunity to get his palm print and fingerprint on the car by means other than involvement in the robbery. And[,] as discussed more fully in point three, evidence from multiple sources connected [Petitioner] with the vehicle the assailants used to reach the robbery scene immediately before, during, and shortly after the robbery.

Even had trial counsel objected and had the court excluded evidence of [Petitioner]'s alleged drug use, there was no reasonable probability that the outcome of the case would have been different. Thus, [Petitioner] did not establish that he was prejudiced by counsel's decision not to object. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I, at 5-6.)

For Petitioner's third point on post-conviction appeal, that his trial attorney was ineffective for failing to call Dixon as a witness for the defense, the Missouri Court of Appeals stated:

[Petitioner] contends that Dixon would have provided independent corroboration of . . . [C]o-[D]efendant's testimony and [V]ictim's initial tentative identification of another man, suggesting that this other man, and not [Petitioner], was one of the assailants.

To prevail on a claim of ineffective assistance of counsel for failure to call a witness, [Petitioner] must show: (1) trial counsel knew or should have known of the witness's existence; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have provided [Petitioner] with a viable defense. Williams [v. State], 168 S.W.3d [433,] 441 [(Mo. 2005) (en banc)]. Counsel's decision not

- 18 -

to call a witness is presumptively a matter of trial strategy, and we will not find counsel ineffective unless [Petitioner] clearly establishes otherwise. Id.

[Petitioner] has failed to allege facts warranting relief in that he has failed to show that Dixon's testimony would have provided him with a viable defense. [Petitioner] claims that Dixon would have testified that he loaned his car to another man early on the morning of the robbery. It is this other man that [V]ictim initially tentatively identified as one of the assailants. The evidence shows that the assailants used a gray Nissan to reach the car wash where they committed the robbery at approximately 3:00 p.m., hours after Dixon allegedly loaned the Nissan to the other man.

Parnell testified that [Petitioner] joined her and . . . [C]o-[D]efendant in the Nissan in the late morning to early afternoon on the day of the robbery. Her testimony and Wal-Mart surveillance video located [Petitioner] at the Wal-Mart near the car wash within the half hour immediately preceding the robbery, and Parnell claimed [Petitioner] left her in the Nissan at the car wash. Parnell and another witness then placed [Petitioner] back with the Nissan in the City of St. Louis within an hour after the robbery. Even had Dixon testified as [Petitioner] claims, Dixon's testimony would not have provided [Petitioner] with a viable defense. Evidence from multiple sources connected [Petitioner] with the Nissan immediately before, during, and shortly after the robbery, and Dixon's testimony that he loaned the Nissan to someone else hours earlier would not aid [Petitioner]. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I, at 5-6.)

The appellate court issued its mandate in the post-conviction appeal on April 24, 2008.

(See April 24, 2008 entry on Docket Sheet for **Taylor v. State**, No. ED90142, https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited July 21, 2011).)

Petitioner then timely filed this habeas proceeding. Petitioner presents seven grounds for relief, each based on the alleged ineffective assistance of his trial attorney. First, Petitioner argues his trial attorney provided ineffective assistance by failing to call Victim to testify at the hearing on a motion to suppress the identification of Petitioner. (Pet. at 2-5

[Doc. 1].) Second, Petitioner urges his trial attorney provided ineffective assistance by failing to object to Victim's in-court identification of Petitioner. (<u>Id.</u> at 5-7.) For his third ground for relief, Petitioner contends his trial attorney provided ineffective assistance by failing to object to Parnell's testimony that Petitioner went to White Castle to buy heroin. (<u>Id.</u> at 8-9.) For Petitioner's fourth ground, Petitioner urges that his trial attorney provided ineffective assistance by failing to object to James's testimony regarding photo surveillance at White Castle and the introduction of the surveillance photographs from White Castle. (<u>Id.</u> at 10-11.) For his fifth ground for habeas relief, Petitioner argues his trial attorney provided ineffective assistance by arguing to the jury that Petitioner had a drug problem and asking the jury not to hold that against Petitioner. (<u>Id.</u> at 12-13.) For his sixth ground for relief, Petitioner contends his trial attorney provided ineffective assistance by failing to call Shalonda Taylor as an alibi witness. (<u>Id.</u> at 13-15.) For his seventh ground, Petitioner argues his trial attorney provided ineffective assistance by failing to call Dixon as a witness. (<u>Id.</u> at 15-16.)

Respondent counters that the first, fourth, fifth, and sixth grounds for relief are procedurally barred and may not be considered on the merits, while the other grounds for relief are without merit. The Court will discuss the procedural bar issues before addressing the merits of the second, third, and seventh grounds for relief.

<u>**Discussion**</u>

<u>Procedural Bar.</u> With respect to the ineffective assistance of trial counsel claims set forth as grounds one, four, five, and six, Respondent argues that these claims are procedurally

defaulted because Petitioner did not present them in his amended post-conviction motion or in his post-conviction appeal.

A state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of claims procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claims in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338 (1992).

In Missouri, a post-conviction proceeding is the exclusive procedure for pursuing ineffective assistance of counsel claims in state court, and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a) and (l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Moreover, the Missouri Supreme Court Rules expressly provide for an appeal from a post-conviction motion court's ruling. Mo. S. Ct. Rule 29.15(k). A federal habeas court may be precluded from considering the merits of a claim procedurally defaulted due to a failure to include the claim in a post-conviction appeal. **Turnage v. Fabian**, 606 F.3d 933, 936, 940-42 (8th Cir. 2010) (not addressing the merits of a federal claim that had not been fairly presented in a brief to the state supreme court after the denial of post-conviction relief); **Storey v. Roper**, 603 F.3d 507, 523-24 (8th Cir. 2010) (not addressing the merits of a claim that the petitioner had not pursued on appeal from the denial of post-conviction relief), cert. denied, 131 S.Ct. 1574 (2011); **Smith v. Jones**, 923 F.2d 588, 589

(8th Cir. 1991) (noting that claims presented in post-conviction motions "and not appealed are procedurally barred"); **Stokes v. Armontrout**, 851 F.2d 1085, 1092 (8th Cir. 1988) (agreeing that a failure to pursue an "ineffective assistance of trial counsel claim on post-conviction appeal . . . created a procedural bar to federal habeas corpus review of that issue").

Therefore, for this Court to address the merits of Petitioner's ineffective assistance of counsel claims, Petitioner must have pursued those claims on appeal from the denial of his post-conviction motion,[17] or must show cause and prejudice or a miscarriage of justice for the failure to pursue the claims in his post-conviction appeal. See **Turnage**, supra, and **Storey**, supra.

As to ground one, that Petitioner's trial attorney failed to call Victim to testify at the pretrial suppression hearing, Petitioner argues that, contrary to Respondent's contention, he did raise this issue in his post-conviction appeal and the Missouri Court of Appeals concluded, in its post-conviction decision, that this claim was "fairly presented" and denied relief on the

---

[17] The Court notes that each of the four habeas claims alleged by Respondent to be procedurally barred was presented in Petitioner's pro se post-conviction motion. (See Pet'r Post-Conviction Mot, Post-Conviction Legal File, Resp't Ex. H, at 9-12, 16-17, 17-19, 19-20, respectively.) Only one of those claims, the one based on the failure to present the alibi testimony of Shalonda Taylor, was presented in Petitioner's amended post-conviction motion and expressly resolved by the post-conviction motion court. Therefore, the relevant procedural issue for that habeas claim is whether or not it was presented in the post-conviction appeal. If this Court determines that the other three allegedly defaulted habeas claims were not raised in Petitioner's post-conviction appeal, then this Court does not need to address whether any of those three claims was resolved by the post-conviction motion court because habeas relief is barred if the claim was not also pursued in the post-conviction appeal. Therefore, the Court will first resolve whether the four allegedly barred habeas claims were presented in Petitioner's post-conviction appeal. If they were not pursued in that appeal, then they are barred from federal habeas review regardless of whether or not the claims were before the post-conviction motion court for consideration.

claim. This Court disagrees with Petitioner, and concludes Petitioner's first habeas claim was not presented in Petitioner's post-conviction appeal, because the claim presented to the state appellate court in that appeal is not the claim set forth as ground one in this federal habeas proceeding.

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal quotation marks omitted) (quoting <u>Middleton v. Roper,</u> 455 F.3d 838, 855 (8th Cir. 2006)); <u>see</u> <u>also</u> **Baldwin**, 541 U.S. at 29. This requires that the factual and legal bases for the federal habeas claim be presented to the state courts before the federal habeas court may consider the merits of the claim. **King v. Kemna**, 266 F.3d 816, 821-22 (8th Cir. 2001) (<u>quoting</u> <u>Flieger v. Delo,</u> 16 F.3d 878, 884-85 (8th Cir. 1994)), for the proposition that, to preserve a claim for federal review, a habeas petitioner must raise both the factual and legal bases for the claim in the state courts, and <u>sua</u> <u>sponte</u> finding a habeas claim procedurally barred because the basis for it had not been presented to the state courts). "'If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'" **Carney**, 487 F.3d at 1096 (quoting <u>Barrett v. Acevedo,</u> 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); <u>accord</u> **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998); **Miller v. Lock**, 108 F.3d 868, 871 (8th Cir. 1997) (finding an ineffective assistance of counsel claim defaulted when petitioner had not presented on post-conviction appeal any such claim "based on a

failure to advise him of the 30-day deadline for filing a post-conviction motion" and had only mentioned counsel in that appeal "in the context of his argument that the [post-conviction rule] timing provisions . . . were unfair"). "Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted." **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007).

In the post-conviction appeal, Petitioner argued that his trial attorney provided ineffective assistance in failing to file a motion to suppress Victim's identification of Petitioner and failing to object to Victim's in-court identification of Petitioner, on the grounds Victim's identification of Petitioner was unreliable due to unduly suggestive police procedures. (Pet'r Br., Resp't Ex. F, at 10, 13.) In contrast, for his first ground in his present habeas petition, Petitioner contends his trial attorney provided ineffective assistance by failing to produce Victim during the hearing on the motion to suppress identification. (Pet. at 2-4 [Doc. 1 at 3-5].) In ground one of his petition, Petitioner does not contend he is entitled to habeas relief due to his trial attorney's failure to file a motion to suppress the identification of Petitioner or his trial attorney's failure to object to Victim's in-court identification of Petitioner, the issues presented in the post-conviction appeal, but rather contends he is entitled to habeas relief because his trial attorney failed to call Victim as a witness at the hearing on the motion to suppress, an issue not presented in the post-conviction appeal. Petitioner did not present to the state appellate court on post-conviction appeal the claim he now asserts as ground one for federal habeas relief; therefore, ground one in this federal habeas proceeding is procedurally defaulted.

As to grounds four (that Petitioner's trial attorney failed to object to surveillance footage and testimony from James placing Petitioner at the White Castle), five (that Petitioner's trial attorney improperly argued during closing that Petitioner had a drug problem), and six (that Petitioner's trial attorney failed to call Petitioner's wife, Shalonda Taylor, as an alibi witness), Petitioner acknowledges those grounds were not pursued in his post-conviction appeal. Therefore, those three grounds for federal habeas relief are also procedurally defaulted because they were not presented in Petitioner's post-conviction appeal.

Here, Petitioner did not pursue in his post-conviction appeal the ineffective assistance of trial counsel claims which he now pursues as grounds one, four, five, and six in his federal habeas petition. Because those claims were not properly pursued in Missouri's courts, and Petitioner is foreclosed from now presenting those claims to the state courts, those grounds for federal habeas relief are procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Id.** at 976-77 (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977) and <u>Murray</u>, 477 U.S. at 492, 496.). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **<u>Greer v. Minnesota</u>**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting <u>Murray</u>, 477 U.S. at 488); <u>accord</u> **<u>Zeitvogel v. Delo</u>**, 84 F.3d 276, 279 (8th Cir. 1996) ("To establish cause, [Petitioner] must show something beyond the

control of post[-]conviction counsel, like State interference, actually prevented postconviction counsel from raising the claims . . . in state court.")  There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).  What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default."  **Murray**, 477 U.S. at 486.  Nor does the ineffective assistance of post-conviction counsel constitute cause for procedural default.  **Oglesby v. Bowersox**, 592 F.3d 922, 925 (8th Cir.) (citing Interiano v. Dormire, 471 F.3d 854, 857 (8th Cir. 2006)), cert. denied, 131 S. Ct. 207 (2010).

Without citation to authority, Petitioner contends that abandonment by his post-conviction counsel is cause excusing his failure to present these ineffective assistance of counsel claims in his post-conviction appeal.   Because there is no constitutional right to the effective assistance of post-conviction counsel, **Armstrong v. Iowa**, 418 F.3d 924, 927 (8th Cir. 2005), and any ineffective assistance of post-conviction counsel cannot constitute cause for a default, **Oglesby**, 592 F.3d at 925, the Court concludes any "abandonment' by post-conviction counsel cannot constitute cause for a default.[18]  Without more, Petitioner has not

---

[18]  The United States Court of Appeals for the Eighth Circuit has acknowledged that Missouri appears to provide a limited remedy for abandonment by post-conviction counsel.  See **White v. Bowersox**, 206 F.3d 776, 779-82 (8th Cir. 2000) (discussing Luleff v. State, 807 S.W.2d 495 (Mo. 1991) (en banc) and State v. White, 873 S.W.2d 590 (Mo. 1994) (en banc), and noting a distinction between an attorney's abandonment of a motion's timeliness and an attorney's abandonment of a motion's content).  To the extent this Court should consider an appellate post-conviction attorney's abandonment a proper basis supporting a finding of cause for failing to raise issues in a post-conviction appeal, the Court concludes the record reveals no abandonment by Petitioner's post-conviction

shown cause for his failure to pursue these ineffective assistance of counsel claims on appeal in the post-conviction proceeding.

Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to consider their merits will result in a fundamental miscarriage of justice. "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice." **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)); accord **House v. Bell**, 547 U.S. 518, 536-39 (2006).[19] "'Without any new evidence of innocence, even the existence of a concededly

---

appellate attorney here. Petitioner's post-conviction attorney filed a timely appeal that presented three points for the appellate court to address, and the appellate court addressed the merits of each of those points on appeal. (See Pet'r Br., Resp't Ex. F, and the decision of the Missouri Court of Appeals in the post-conviction appeal, Resp't Ex. I.) There is no indication that the Missouri Court of Appeals considered Petitioner's post-conviction appeal untimely or otherwise barred, or that the state appellate court refused to consider the merits of any points on appeal, due to any conduct, any absence of conduct, or any abandonment by Petitioner's counsel on post-conviction appeal.

[19] In relevant part, the Supreme Court in **House** specifically concluded that, with respect to first petitions for federal habeas relief to which the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, applies, such as this one, the **Schlup** standard determines whether the habeas court should consider defaulted claims based on a showing of actual innocence. **House**, 547 U.S. at 539.

meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, the ineffective assistance of trial counsel claims presented as grounds one, four, five and six in Petitioner's habeas petition are procedurally barred and should not be considered on their merits. The remaining three ineffective assistance of trial counsel claims will be addressed on their merits.

Merits - Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* "when the state court's decision [is] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court [of the United States], or the [state court] decision [is ]based on an unreasonable determination of the facts in light of the evidence presented in the state court." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009), cert. denied, 130 S. Ct. 2412 (2010); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "A state court decision is contrary to clearly established federal law if it reaches a conclusion opposite to one reached by the [United States] Supreme Court on a question of law or decides the case differently than the [United States] Supreme Court has decided a case with a materially indistinguishable set of facts." **de la Garza**, 574 F.3d at

1001; accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010).  "A state court decision involves an unreasonable application of clearly established federal law if, in the federal court's independent judgment, the relevant state court decision not only applied clearly established federal law incorrectly, but also did so unreasonably."  **de la Garza**, 574 F.3d at 1001.  "The unreasonable application inquiry is an objective one."  **Id.**; see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of § 2254, a habeas petition may be granted "only if the state court applied the correct governing legal principle in an objectively unreasonable manner").

Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on the point."  **Losh**, 592 F.3d at 823 (citations omitted).  The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of the AEDPA standard."  **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to

the contrary." **Harrington v. Richter**, 131 S. Ct. 770, 784-85 (2011). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" **Id.** at 785.

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the state's lower and appellate courts. **Smulls**, 535 F.3d at 864-65.

Standard of Review - Ineffective Assistance of Counsel. An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second, that counsel's errors prejudiced the defense." **Id.** (citations omitted) (citing Strickland, 466 U.S. at 687); **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)), cert. denied, 130 S.Ct. 3369 (2010). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Id.** at 596 (quoting McCauley-Bey, 97 F.3d at 1105); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the

burden of showing such a reasonable probability.  **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice.  See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

Notably, in its post-conviction appeal opinion, the Missouri Court of Appeals cited to **Strickland** as setting forth the standard applicable to an ineffective assistance of counsel claim.

Ground Two - Ineffectiveness of Trial Attorney - Failure to Object to In-Court Identification Testimony.  In his second ground for habeas relief, Petitioner argues that his trial attorney was ineffective for failing to object to the Victim's in-court identification of Petitioner.  Petitioner urges this positive identification of Petitioner as one of the robbers was the result of suggestive conduct by the police who, Petitioner states, told Victim to identify Petitioner.  Specifically Petitioner contends that Victim initially identified Seviere and Co-Defendant positively as the two individuals who had committed the crime; and then, after the police found prints matching Petitioner and Co-Defendant on Victim's property, the police showed Victim a lineup, including Petitioner, at which Victim stated either number four

(Petitioner) or number five was one of the persons involved in the robbery. (Trial Tr., Resp't Ex. D, at 27-29, 35-36, 55-56, 58-60, 283-84.)

Respondent points out that the Missouri Court of Appeals found that the investigative procedures were not impermissibly suggestive; that, in the absence of such a finding, Petitioner cannot establish that an objection at trial would have had merit; and that trial counsel cannot be faulted for failing to make a meritless objection.

The record reveals the state appellate court made the findings as noted by Respondent. (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I, at 4-5.) In support of its conclusion that the police procedures were not unduly suggestive, the state appellate court specifically found "no evidence that the lineup was structured in any way to draw [V]ictim's attention to [Petitioner]"; "no evidence that the police in any way encouraged [the] identification [of Petitioner]"; and "[V]ictim was unable to positively identify [Petitioner] during the lineup, which further confirms that the lineup was not unduly suggestive." (Id.) Additionally, the trial court had concluded, after hearing testimony of two detectives who participated in the pretrial identification procedures and the testimony of Victim, that Victim "had sufficient opportunity to observe the events" and identify the robbers and that "the police procedures were not impermissibly suggestive as to taint the line-ups." (Trial Tr., Resp't Ex. D, at 333.)

When an ineffective assistance of counsel claim is based on a failure to challenge the admission of identification testimony, the petitioner must show prejudice by "demonstrat[ing] that the admission of [the] identification testimony resulted in a deprivation of [the

petitioner's] due process rights and, therefore, it is reasonably probable that, but for his counsel's failure to challenge that evidence, the result of the proceedings would have been different." **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999). "A conviction based on eyewitness identification at trial will be set aside only when pre-trial identification procedures were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm." **Trevino v. Dahm**, 2 F.3d 829, 833 (8th Cir. 1993) (citing Manson v. Brathwaite, 432 U.S. 98, 109-14 (1977)); accord **Palmer v. Clarke**, 408 F.3d 423, 435 (8th Cir. 2005) (applying standard to photographic lineup procedure). "[R]eliability is the linchpin in determining the admissibility of identification testimony[.]" **Manson**, 432 U.S. at 114. Even if pretrial identification procedures are suggestive or inappropriate, "[t]he central question is whether, under the totality of the circumstances, the identification was reliable" despite such pretrial procedures. **Trevino**, 2 F.3d at 833 (citing Neil v. Biggers, 409 U.S. 188 (1972)). In determining the reliability of an identification, the Court considers the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the time of the pretrial identification procedures, and the length of time between the crime and those procedures. See **Manson**, 432 U.S. at 114 (citing Biggers, 409 U.S. at 199-200); **Palmer**, 408 F.3d at 435.

Here, the trial court concluded, after hearing testimony of two detectives conducting the pretrial identification procedures as well as the testimony of Victim, that Victim "had

sufficient opportunity to observe the events" and identify the robbers and that "the police procedures were not impermissibly suggestive as to taint the line-ups." In the post-conviction appeal, the Missouri Court of Appeals concluded that nothing in the structure of the pretrial identification procedures or in the conduct of those procedures rendered them unduly suggestive. The record supports these conclusions, and Petitioner has not provided any factual or other basis for disputing them. The Court finds no support for Petitioner's contention that the police "told" Victim to identify Petitioner.

Moreover, due to his proximity to both Petitioner and his car, Victim had a sufficient opportunity to observe Petitioner in the summer afternoon hours at the car wash when Petitioner took the car keys from Victim's pockets and entered Victim's nearby car to drive it away. See **Collins v. Dormire**, 240 F.3d 724, 727-28 (8th Cir. 2001) (finding eyewitness's identification of defendant to be reliable, eyewitness had stood five to six feet away from defendant for a few minutes). There is no indication that during the crime Victim's attention was distracted, Victim's vision was obscured, Petitioner's face was covered, or Petitioner was hidden. Rather, it is clear that, under the circumstances, Victim would have paid close attention to the relevant events, during which Petitioner and Co-Defendant, who displayed a gun, grabbed Victim while he was washing his car at a car wash, Petitioner removed car keys from Victim's pockets, and then Petitioner drove Victim's car away. While Victim's pretrial identification of Petitioner occurred within a month of the offenses and was not a certain identification, Victim's in-court identification of Petitioner was reliable under the circumstances and the admission of the testimony identifying Petitioner as one of the

perpetrators did not constitute a deprivation of Petitioner's due process rights.[20] Having found the identification of Petitioner was reliable and, therefore, admissible, the Court concludes that Petitioner's trial counsel's failure to object to Victim's identification testimony was not deficient performance.  **Carter v. Hopkins**, 92 F.3d 666, 671 (8th Cir. 1996) ("it was objectively reasonable not to make the meritless objection" to in-court identifications; therefore, the petitioner's trial counsel did not provide ineffective assistance in failing to object to the in-court identifications).

In support of this ground for relief, Petitioner relies on the fact that, prior to trial, Victim first identified a different man as one of the perpetrators and never positively identified Petitioner as one of the perpetrators.  The record establishes those circumstances existed, were the subject of cross-examination by Petitioner's counsel during trial, and were considered by the state court of appeals during Petitioner's post-conviction appeal.  Under the circumstances, this argument does not constitute a basis for overturning in this federal habeas proceeding the state courts' conclusions regarding the admission of the identification of Petitioner.

The state court decisions upholding the identification of Petitioner and finding no ineffective assistance of counsel in the failure of Petitioner's trial attorney to object to Victim's in-court identification of Petitioner were not contrary to, or an unreasonable application of, clearly established federal law and are supported by the record.  See **Mann v. Thalacker**, 246

---

[20]    Furthermore, Parnell's trial testimony identifying Petitioner as a participant in the offenses and James's testimony that Petitioner's palm print and fingerprint were on Victim's car, support the identification of Petitioner as one of the perpetrators.

F.3d 1092, 1099-1100 (8th Cir. 2001) (attorney who failed to move to suppress identification did not provide ineffective assistance, based on appellate court's conclusion the identification procedure "was not unduly suggestive and did not create a very substantial likelihood of irreparable misidentification" due to district court's consideration of the factors set forth in Biggers); **Thomas v. Bowersox**, 208 F.3d 699, 702 (8th Cir. 2000) (attorney who did not argue at trial the inadmissibility of three witnesses' identification testimony did not provide ineffective assistance because the crime scene conditions "permit[ted] adequate observation, the police did not employ suggestive identification procedures," and the petitioner had not presented evidence supporting his contention that the first witness improperly influenced the subsequent witnesses' identification).

Ground two lacks merit.

Ground Three - Ineffective Assistance of Counsel - Evidence of Uncharged Crime. Petitioner urges in ground three that his trial attorney provided ineffective assistance of counsel by failing to object to Parnell's testimony that Petitioner went to White Castle on Hebert to "buy heroin."[21] In support of this ground, Petitioner contends this testimony presents improper evidence of uncharged crimes; and focuses on conduct occurring after the

---

[21] This ground for federal habeas relief may be barred because it focuses on Petitioner's trial attorney's failure to object to testimony about Petitioner's alleged purchase of heroin on the day of the offenses, rather than presenting the issue Petitioner had raised in his post-conviction appeal regarding the ineffective assistance of counsel arising out of his trial attorney's failure to object to testimony about Petitioner's use of heroin on the day of the offenses. Because Respondent does not argue that this ground for habeas relief is barred, the Court will consider it as part of the heroin issue presented to the Missouri Court of Appeals and will the address its merits on the basis of that state court's decision.

charged offenses. Respondent contends the Missouri appellate court properly rejected this claim on the ground that the prejudice prong of an ineffective assistance of counsel claim under **Strickland** was not established in that, even if the evidence had been excluded, there was no reasonable probability that the outcome of the case would be different due to the overwhelming evidence of Petitioner's guilt.

In rejecting this point on Petitioner's post-conviction appeal, the Missouri Court of Appeals found the evidence that Petitioner had committed the robbery was overwhelming in that Parnell described Petitioner's activities the day of the robbery, including during the robbery, and surveillance videos from several different sources corroborated her testimony; Victim identified Petitioner; Petitioner's palm print and fingerprint were found on Victim's car, which was recovered in Petitioner's "immediate neighborhood" within one hour of the robbery; and "multiple sources connected [Petitioner] with the vehicle the assailants used to reach the robbery scene immediately before, during, and shortly after the robbery." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I, at 5-6.)

When there is strong evidence of guilt, a petitioner does not establish an ineffective assistance of counsel claim based on the attorney's failure to object to evidence, because the petitioner cannot "show that there is a reasonable probability that, but for counsel's failure to object to th[e] evidence, the result of the trial would have been different." **Parker v. Bowersox**, 94 F.3d 458, 461 (8th Cir. 1996). Here, the Missouri Court of Appeals' finding that there was overwhelming evidence of Petitioner's guilt is supported by the record and is based on a reasonable determination of the facts in light of the evidence presented. Moreover,

the state court's decision that Petitioner's trial counsel did not provide ineffective assistance of counsel by failing to object to Parnell's testimony that Petitioner, Parnell, and Co-Defendant went to White Castle to purchase heroin on the day of the charged offenses, is not contrary to or an unreasonable application of clearly established federal law.

The third ground for relief lacks merit.

Ground Seven - Ineffective Assistance of Trial Counsel – Failure to Call a Witness. In ground seven, Petitioner argues his trial attorney provided ineffective assistance of counsel by failing to call Dixon, the Nissan owner, who would reportedly have testified that he lent the Nissan to Seviere at about 1:30 a.m. on August 23, 2003.[22]  Respondent counters that Petitioner has failed to satisfy either prong of the **Strickland** ineffective assistance of counsel standard because, as to the performance prong, the Missouri Court of Appeals properly concluded Dixon's testimony would not have contradicted the evidence that Petitioner drove the Nissan at the time of the robbery during the afternoon of August 23, 2003, and, as to the prejudice prong, Dixon's testimony would not have changed the outcome of Petitioner's trial due to the overwhelming evidence of Petitioner's guilt.

---

[22]  In the post-conviction judgment, the court stated

[Petitioner] feels he was prejudiced [by his trial attorney's failure to investigate, subpoena and call Anthony Dixon as a defense witness at trial] because Anthony Dixon would have testified that on August 23, 2003, at 4200 Martin Luther King Boulevard around 1:30 a.m., he let Antonio Seviere borrow his Nissan car.  Also, Mr. Dixon would have testified that he held onto Mr. Seviere's identification when [Seviere] borrowed his car.

(Post-conviction J., Post-conviction Legal File, Resp't Ex. H, at 44.)

As Respondent notes, the state appellate court concluded Dixon would not have provided Petitioner with a viable defense because the robbery occurred hours after Dixon allegedly loaned the Nissan to Seviere. Specifically, the state appellate court found "[e]vidence from multiple sources connected [Petitioner] with the Nissan immediately before, during, and shortly after the robbery, and Dixon's testimony that he had loaned the Nissan to someone else hours earlier would not aid [Petitioner]." (Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b)(2), Resp't Ex. I, at 5-6.)

Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight. **Hanes v. Dormire**, 240 F.3d 694, 698 (8th Cir. 2001) (internal quotation marks omitted) (quoting Williams v. Armontrout, 912 F.2d 924, 934 (8th Cir. 1990) (en banc)). When a potential witness' testimony might have helped rebut or clarify evidence, to be entitled to relief a habeas petitioner must show that the "proferred testimony was so important as to put counsel's failure to consult with or call the[] witness[] outside the wide range of strategic choices that counsel is afforded." **Id.**

Here, Petitioner's trial attorney's failure to present Dixon's testimony, that he gave Seviere the Nissan approximately thirteen hours before the charged offenses occurred, was not outside the wide range of strategic choices afforded counsel because Dixon's testimony was not significant or crucial and, in fact, did not support a defense for Petitioner due to the long period of time between Dixon's reported lending of the car to Seviere and the occurrence of the charged offenses, especially in light of the other evidence presented at trial. The Missouri Court of Appeals' finding that Dixon's testimony would not have contradicted the

State's evidence is supported by the record; Petitioner has not rebutted that finding with clear and convincing evidence; and the state court's decision is not contrary to or an unreasonable application of clearly established federal law. Petitioner's trial attorney did not provide ineffective assistance of counsel by failing to present Dixon's testimony that he lent Seviere the Nissan at about 1:30 a.m. on August 23, 2003.

Ground seven lacks merit.

### Conclusion

After careful consideration, the undersigned recommends the denial of Petitioner's petition for federal habeas relief because the first, fourth, fifth, and sixth grounds for federal habeas relief are procedurally barred and each of Petitioner's other three grounds for federal habeas relief lack merit. Accordingly,

**IT IS HEREBY ORDERED** that Troy Steele is **SUBSTITUTED** for Steve Larkins as the Respondent in this case.

**IT IS FURTHER ORDERED** that the Clerk's Office shall make pages 18, 21, 31, 41, 47-49, and 62 of Respondent's Exhibit C part of the record of this case, to be retained with Respondent's Exhibit C.

**IT IS FINALLY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Demetrius Taylor be **DENIED** without further proceedings.

The parties are advised that they have **fourteen days** to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. §

636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

 /s/Thomas C. Mummert, III

THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  25th  day of July, 2011.